Opinion delivered March 7, 1888.

---

No. 2503.

## EX PARTE GEORGE WALCK.

HABEAS CORPUS—FACT CASE.—See the statement of the case for evidence, *held* sufficient to authorize the district judge to hold the relator in bail to answer before the grand jury to a charge of theft, although this court expressly disclaims an opinion upon the merits of the case.

Habeas Corpus on appeal from the District Court of Wheeler. Tried below before the Hon. Frank Willis.

The relator in this case, who was held to bail in the sum of two thousand dollars by the justice of the peace upon a complaint charging him with cattle theft, sought his discharge by the writ of habeas corpus which he sued out before the district court. The said court, upon the hearing of the writ, reduced the bail to four hundred dollars; and refused the discharge. From this judgment the relator appealed to this court.

The case was submitted to the district judge upon the record of the proceedings had in the justice's court. W. S. Griffiths was the first witness who testified before the justice of the peace. He stated that he was living at the Walck "dug out," in Lipscomb county, on the twenty-first day of December, 1887. That dug out was about two and a half miles from the town of Higgins. On the afternoon of the said December 21, 1887, witness, defendant and Del Walck left the dug out to go quail shooting, witness being unarmed, defendant armed with a shot gun, and Del Walck with an Allen rifle. They had gone about a quarter of a mile when they met Adam Walck and Hiram Walck, who had a wagon load of wood and the carcasses of four deer on top of the load of wood. They were traveling toward Higgins, and said that they were going there. Adam drove on towards Higgins, and Hiram went towards the dug out, remarking that he had to get a letter to mail. Witness, defendant and Del Walck then proceeded on their journey. Defendant and Del entered a gulch about a mile distant from the dug out, and witness traveled parallel with them on the bank of the gulch. When they had traveled a short distance in that order the witness heard two or three gun shots. He looked, but could not then see the defendant. He, however, saw Del Walck standing in the gulch with his gun to his shoulder. A few yards in advance of Del Walck he saw a red and white spotted steer. Witness at once called to Del to "come away from there." Del, in reply, called witness to join him in the gulch. Witness declined, saying that he would have nothing to do with the transaction. He then hallooed for defendant, who, coming out of a drain to the left of the gulch, joined the witness. Witness said to him: "George, come go to the house with me." He and witness then went to the house, leaving Del in the gulch. Hiram and Adam Walck

got back to the dug out about half-past nine o'clock on that night. About seven o'clock on the next morning, the witness saw a piece of beef on the wagon of Adam and Hiram Walck, and after that they had beef at meals. Witness saw the red spotted beef fall when Del fired his second shot. The several shots sounded like they were all fired from a rifle. Witness knew that no beef had been recently slaughtered at the dug out. On the way home from the gulch witness said to defendant, referring to the shooting of the beef: "George, have nothing to do with this work." Defendant replied: "I have nothing to do with any work." Frank Bigger and George Patton afterwards found a beef hide near the place where Del shot at the beef. The hide was marked like the beef at which witness saw Del Walck shoot; witness showed them where to look for the hide.

Frank Bigger testified, for the State, that he got the witness Griffiths to go with him and Patton and show them the place where he said some hides were buried. Griffiths piloted witness and Patton to a point in the gulch near which, after a short search, the witness found buried the hide of a red and white spotted DI— cow. That brand belonged to McQuigg & Ramsay.

R. L. Ramsay testified, for the State, that a certain hide from a DI— cow, claimed to have been found, buried, by Bigger and Patton, had been shown to him. Witness and McQuigg owned all the cattle in that brand. He never gave his consent to the defendant to kill that cow, and was satisfied that, if killed by defendant, it was killed without the consent of McQuigg.

The State closed.

Thomas Strode testified that, to his knowledge, the Walcks, several times during the fall of 1887, got beef from Bigger's ranch. He could not recollect the day on which they last got beef from that ranch.

Adam Walck testified, for the defendant, that it was his impression that the beef served at meals at the dug out, after December 21, 1887, came from Bigger's ranch.

E. D. Walck, after being cautioned according to law, testified, for the defendant, as follows: "Gentlemen, I killed this beef myself. Neither father, High nor George knew anything about it. I told father I got it from Mr. Bigger. Father and Hiram were in town."

No brief for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Hurt, Judge. The applicant was charged before the justice with the theft of one head of cattle. Upon an examination of the charge the justice committed him to jail in default of bond in the sum of two thousand dollars; whereupon he sued out a writ of habeas corpus before the Hon. Frank Willis, district judge. Upon a hearing of the writ the learned judge reduced the bond from two thousand dollars to four hundred dollars. Applicant excepted because he was not discharged without bond, and brings the case to this court.

By article 176 of the Code of Criminal Procedure it is provided that " when, upon an examination under habeas corpus, it shall appear to the court or judge that there is probable cause to believe that an offense has been committed by the prisoner, he shall not be discharged," etc. Under the facts, as they appear in this record, we are of opinion that there was no error in requiring a bond of applicant, it appearing to us that there was probable cause to believe that an offense had been committed by the applicant. But it is not to be inferred from this that there is evidence sufficient to sustain a conviction or warrant an indictment. We believe, under the facts of the case, that it was proper to require the bond, so as to secure the presence of the applicant, if, upon a more thorough investigation, sufficient evidence should be discovered upon which to present an indictment.

The judgment is affirmed.

*Affirmed.*